**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **ERIC DEAN CASTLEBERRY, as** | ) | |
| **Administrator of the Estate of** | ) | |
| **TEDDY CASTLEBERRY, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:20-CV-396 (MTT)** |
| | ) | |
| **ANTHONY K. THOMAS, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Defendant Total Quality Logistics, LLC ("TQL") has moved for summary

judgment.  Doc. 4.  Specifically, TQL claims that, as a matter of law, it is not liable for

the negligence of its independent contractor.  For the following reasons, that motion is

**GRANTED**.

## I. BACKGROUND[1]

On December 12, 2017, Teddy Castleberry[2] was in a motor vehicle accident with

a tractor-trailer driven by Defendant Anthony Thomas.  Doc. 5 at 1.  Thomas was

employed by his company, Anthony Thomas Logistics, LLC ("the LLC").  *Id.*  At the time

of the accident, Thomas was delivering a load pursuant to agreements between the

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[2] Teddy Castleberry is now deceased.  His son, Eric Dean Castleberry, the administrator of Teddy's estate, has been substituted for Teddy.  Doc. 10.

LLC, which is a motor carrier, and TQL, a freight broker.  Docs. 4-4 ¶ 2; 5-7 ¶ 2.  First, the LLC, in its capacity as a motor carrier, entered into a "Broker/Carrier Agreement" with TQL which defined the relationship between the LLC and TQL.  Doc. 5-2.  Second, for the load in question, the LLC and TQL entered into a rate confirmation contract which specified pickup location, drop-off location, type of load, and payment—a flat rate of $800.  Doc. 5-3.

The Broker/Carrier Agreement has a provision labeled "independent contractors."[3]  Doc. 5-2 at 4.  In that provision, the LLC and TQL agreed that the LLC would "employ, pay, supervise, direct, discipline, discharge, and assume full responsibility and control over all persons required for [the LLC's] performance of the Services.  [TQL] ha[d] no right to discipline or direct the performance of any driver and/or employee, contractor, subcontractor, or agent of [the LLC]."  *Id.*  The Broker/Carrier Agreement required the LLC to check in with TQL every day, report any problems to TQL, reimburse TQL for any late charges, provide an operable trailer to be used exclusively for the contracted freight, and obtain TQL's consent before disposal of any load.  *Id.* at 7.  Further, the LLC was not allowed to communicate directly with any customers.  *Id.*  The LLC paid fuel costs, provided its own insurance, and, significantly, assumed full responsibility for freight consigned to it.  Docs. 4-4 ¶¶ 7, 14; 5-2 at 3; 5-5 ¶¶ 7, 14.  TQL, on the other hand, assumed no responsibility for freight in the LLC's possession, did not pick the LLC's route to the destination, did not inform the LLC specifically what to do upon arrival, and did not provide the LLC or Thomas with "any

---

[3] The plaintiffs point out that the "Agreement expressly provided that the section headings of the Agreement are for 'convenience only and shall not be used to interpret the agreement.'"  Doc. 5 at 3 (citing Doc. 5-2 at 8).  The Court has used the section headings only for convenience.

safety policies or training."  Docs. 4-4 ¶¶ 16, 17, 18, 21; 5-5 ¶¶ 16, 17, 18, 21.  Finally, the LLC did not move freight exclusively for TQL; it had agreements with other freight brokers.  Docs. 4-4 ¶ 11; 5-7 ¶ 9; 7 at 29.

The plaintiffs assert a claim against TQL for imputed negligence because "TQL is responsible for the actions of [the LLC and Thomas individually] with regard to the subject collision under the doctrine of agency, and/or apparent agency."  Doc. 1-1 at 102.  The plaintiffs also assert a claim against TQL for negligent hiring.  *Id.*  The plaintiffs state, "[p]rior to hiring [the LLC and Thomas individually] to transport the load to [Georgia], TQL failed to screen [them] and further failed to investigate their safety record when doing so would have revealed safety concerns."  *Id.*

TQL argues that it is entitled to summary judgment because it is a broker, and any claim against it for liability is preempted by the Federal Aviation Administration Authorization Act ("FAAAA").  Doc. 4-1 at 5-6.  TQL also argues that even absent preemption, it is nonetheless entitled to summary judgment because no agency relationship existed between TQL and either the LLC or Thomas individually.  *Id.* at 6-8.  The plaintiffs, on the other hand, argue that their claims against TQL are not barred by the FAAAA because of a safety regulatory exception built into the statute.  Doc. 5 at 7.  Further, the plaintiffs assert that "TQL retained an extensive degree of control … sufficient to support an agency relationship between TQL and [the LLC]."  *Id.* at 9.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to

address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Under Georgia law, for a negligent act committed by Thomas to be imputed to TQL there must be an agency relationship between the two.  "For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent."  O.C.G.A. § 51-2-1(a).  Negligence is not generally imputed, however, when the negligent act is committed by an independent contractor who is "not subject to the immediate direction and control of the employer."  O.C.G.A. § 51-2-4.

Undeniably, the contract between the LLC, a motor carrier, and TQL, a freight broker, attempts to create an independent contractor relationship.  Also undeniably, the regulatory scheme governing drivers, motor carriers, and freight brokers puts the responsibility for drivers squarely on motor carriers rather than freight brokers.  As counsel for the plaintiffs acknowledged at oral argument, the Federal Motor Carrier Safety Regulations require motor carriers, not freight brokers, to ensure drivers are qualified and that they operate their vehicles safely.  This regulatory framework defining the roles of drivers, motor carriers, and freight brokers does not mean a freight broker could not, if it wanted, create an agency relationship with a motor carrier and its drivers.

However, that framework bolsters the stated intent of the contracting parties here to create an independent contractor relationship.  In the face of all that, the plaintiffs argue that TQL's retention of some control over the transport of freight upsets that contractual and regulatory scheme and turns Thomas, individually, into an agent of TQL.

An employer of an independent contractor is not liable for the contractor's negligence unless the employer "actually exercise[s] control over the manner and means of doing the details of the work."  *Toys "R" Us, Inc. v. Atlanta Econ. Dev. Corp.*, 195 Ga. App. 195, 196, 393 S.E.2d 44, 46-47 (1990) (quoting *Bentley v. Jones*, 48 Ga. App. 587, 592, 173 S.E. 737, 739 (1934)).  In other words, for an employer to be liable for the negligent acts of an independent contractor, the employer must retain more than a general right to oversee the work done, but instead must retain control so that "the contractor is not entirely free to do the work in his own way."  *Id.* (quoting *Slater v. Canal Wood Corp.*, 178 Ga. App. 877, 880, 345 S.E.2d 71, 74 (1986)).

Georgia courts have also listed factors to consider when determining whether an agency relationship existed in the guise of an independent contractor relationship. Some of those factors include whether the employer supplied the tools, the length of time of employment, whether payment was a flat rate, and whether the parties thought they were in an agency agreement.  *Moss v. Central of Georgia R. Co.*, 135 Ga. App. 904, 906, 219 S.E.2d 593, 906 (1975).

Here, the plaintiffs point to specific provisions of the Broker/Carrier Agreement in arguing that TQL and the LLC were in fact in an agency relationship.  The plaintiffs argue that because TQL required the LLC to abide by specific "accountability requirements," TQL was exerting control over the LLC.  Doc. 5 at 3.  These

requirements included checking in with TQL daily, reporting problems to TQL, granting TQL exclusive use of trailer space, and not subcontracting loads.  *Id.*  The plaintiffs also rely on the facts that TQL had the capability of tracking Thomas's location through GPS and that he was prohibited from speaking directly to customers.  *Id.* at 8-9.  These facts, according to the plaintiffs, establish that the LLC—and its employee, Thomas—were under the control and supervision of TQL.  But none of these contractual rights and obligations are inconsistent with an independent contractor relationship.  Monitoring and checking an independent contractor's progress, even on a frequent basis, is "thoroughly consistent with the relationship of the employer and independent contractor and with the mere right of the employer to insist on a certain result."  *Kimble v. BHM Const. Co. Inc.*, 193 Ga. App. 441, 442, 388 S.E.2d 40, 41 (1989).

And the undisputed facts point inescapably to the conclusion that the LLC was an independent contractor.  For example, the LLC supplied the tractor and trailer to transport the load, the LLC supplied its own insurance, the LLC selected the travel route, the LLC was paid a flat rate to haul the load, the LLC paid for fuel costs, the LLC did not move freight exclusively for TQL, and Thomas, the sole employee of the LLC, did not believe he was employed by TQL.  Docs. 4-4 ¶¶ 7, 13, 14; 5-5 ¶¶ 7, 13, 14; 7 at 29-30.

As to TQL not allowing the LLC or its employees to communicate with customers, TQL argues that prohibition existed to prevent the LLC from cutting TQL, the broker, out of any future loads by working directly with customers in the future.  Doc. 11 at 8.  While that argument is reasonable, there is no evidence to support it.  But nor is there evidence that such a prohibition is indicative of an agency relationship.  On the contrary,

in an agency relationship, an employer wants its employee to speak and act on its behalf.

The facts here are, in relevant part, essentially the facts in *McLaine v. McLeod*. 291 Ga. App. 335, 661 S.E.2d 695 (2008).  There, the Georgia Court of Appeals held that a freight broker was not liable for a truck driver's negligence because the driver's employer, a motor carrier, was only an independent contractor of the broker and not an employee or agent.  *Id.* at 341, 661 S.E.2d at 700.  The evidence showed that the freight broker did not tell the driver which routes to take, did not provide equipment to the driver, did not provide insurance for the driver, and did not "exercise any control or input over the time, method and manner of [the driver's] work and driving."  *Id.* at 338, 661 S.E.2d at 698.  Although the broker retained some control over the driver, such as instructing the driver where to pick up and drop off cargo, the court held that the broker, "merely retained the right to require results in conformity with the contract and [the driver and motor carrier] retained the right to perform the work by their own means, method and manner."  *Id.* at 341, 661 S.E.2d at 700.  That is precisely what TQL did here.

Both the Broker/Carrier Agreement and the undisputed facts establish that TQL did not control the LLC nor the manner in which it moved the freight.  *See* O.C.G.A. § 51-2-4; *Toys "R" Us, Inc.*, 195 Ga. App. at 196, 393 S.E.2d at 46-47.  Instead, the facts merely show that TQL exercised its right to check on the LLC's progress and to ensure the load arrived at its destination on time.  *See Kimble*, 193 Ga. App. at 442, 388 S.E.2d at 41.  Therefore, there was no agency relationship between the LLC and TQL, and any alleged negligence by Thomas, an employee of the LLC, cannot be imputed to TQL.

Further, because no agency relationship existed between the LLC and TQL, the plaintiffs' negligent hiring and retention claim must also fail. "[T]here can be no claim for negligent hiring … of certain individuals where, as here, the defendant was not the employer of those individuals." *New Star Realty, Inc. v. Jungang PRI USA, LLC*, 346 Ga. App. 548, 562, 816 S.E.2d 501, 513 (2018).

Because no agency relationship existed between the LLC and TQL, much less Thomas individually, the Court does not reach the issue of whether the plaintiffs' claims are preempted by the FAAAA.

## IV. CONCLUSION

For the reasons discussed above, TQL's motion for summary judgment (Doc. 4) is **GRANTED**.  The plaintiffs' claims against TQL are **DISMISSED** with prejudice.

**SO ORDERED**, this 1st day of December, 2020.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT