**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **ERIC DEAN CASTLEBERRY, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:20-CV-396 (MTT)** |
| | ) | |
| **ANTHONY K. THOMAS, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Defendants Anthony K. Thomas and Anthony Thomas Logistics, LLC have

moved for summary judgment on the plaintiffs' claims for lost profits, punitive damages,

bad faith attorney's fees, and negligence per se.  Doc. 26.  For the following reasons,

the defendants' motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[1]

The facts of this case are straightforward and mostly undisputed.  On December

12, 2017, Teddy Castleberry was in a motor vehicle accident with a tractor-trailer

operated by Defendant Anthony Thomas.[2]  On the date of the accident, Thomas, who

was employed by his company, Anthony Thomas Logistics, LLC, was making a delivery

to Cash Liquidations, a business in Monroe County, Georgia.  Docs. 26-8 ¶ 1; 29 ¶ 1.

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[2] Teddy Castleberry is now deceased for reasons unrelated to the accident.  His son, Eric Dean Castleberry, the administrator of Teddy's estate, has been substituted in his place.  Doc. 10.  Teddy Castleberry's surviving spouse, Shirley Castleberry, is also a plaintiff in this case because of a loss of consortium claim not at issue in this order.

Cash Liquidations unloaded trucks on a first-come, first-served basis, and Thomas was informed that Cash Liquidations opened at 10:00 a.m.  Doc. 31-3 at 49:13-50:15. Thomas arrived at Cash Liquidations on the day of the accident at 6:30 a.m., three and a half hours early.  *Id*. at 66:5-8.  Not surprisingly, Thomas's was the first truck to arrive at Cash Liquidations that day, and because he wanted to ensure his trailer would be the first unloaded, he parked along the road outside of the business's entrance.  *Id*. at 70:5-71:18; Docs. 26-8 ¶ 2; 29 ¶ 2.  Thomas knew that his trailer was partially parked in the road, and he even testified that he parked next to a no parking sign because he "wanted to be sure [he] was the first in line."  Docs. 26-8 ¶ 3; 29 ¶ 3; 31-3 at 71:4-72:23, 107:15-108:2.  Approximately two hours after Thomas arrived, and with his trailer still parked in the road, Castleberry drove his vehicle into the trailer, which was allegedly indiscernible because of the position of the sun.  Docs. 1-1 ¶ 20; 26-3 ¶ 5; 29 ¶ 5.

The defendants have moved for summary judgment on the plaintiffs' claims for lost profits, punitive damages, bad faith attorney's fees, and negligence per se.  Doc. 26.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson*, 477 U.S. at 248.  The movant may support its assertion that a

fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

**A. Lost Profits**

The plaintiffs assert that because of the motor vehicle accident, Castleberry was unable to work and thus his restaurant, This Little Piggy BBQ, lost profits.  Doc. 1-1 ¶ 23.  The defendants contend, however, that the plaintiffs cannot provide the evidence necessary for a jury to award lost profit damages.  Doc. 26 at 10-13.  Specifically, the defendants argue that relevant tax records establish that This Little Piggy BBQ was operating at a net loss in the years immediately preceding the motor vehicle accident. *Id*. at 11.  Thus, according to the defendants, lost profit damages are inappropriate in this case.

Under Georgia law, a plaintiff may recover lost business profits if the business has a proven track record of profitability.  *Stern's Gallery of Gifts, Inc. v. Corp. Prop. Investors, Inc*., 176 Ga. App. 586, 592 (1985).  But if a business does not have a history of profitability, lost profits are too speculative to be awarded.  *Springwell Dispensers, Inc. v. Hall China Co*., 204 Ga. App. 245, 246 (1992).  To calculate profitability, the fact finder "must be provided with figures establishing the business' projected revenue as well as its projected expenses."  *Johnson Cnty. Sch. Dist. v. Greater Savanah Lawn Care*, 278 Ga. App. 110, 112 (2006).  In other words, a plaintiff seeking lost profits must produce evidence of lost net profits—lost gross profits are insufficient.  *Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc.*, 262 Ga. App. 826, 831 (2003).

The plaintiffs assert that "tax records from 2014, 2015, and 2016 show that [Castleberry] was working in the years prior to the wreck and show a gross profit for the BBQ restaurant of $85,709 in 2014, $48,117 in 2015, and $47,704 in 2016." Doc. 27 at 5. The plaintiffs further add that "[i]n the months prior to the wreck in 2017, $45,141.70 was deposited into the restaurant's bank account."[3] *Id*. at 12. Using the business's gross profits from 2014 through 2016 and the bank deposits from 2017, the plaintiffs arrive at $4,723.33 as the restaurant's monthly gross profit before the accident. *Id*. From there, the plaintiffs claim that the difference between Castleberry's expected gross profits from the time of the accident to his death ($129,864.07) and the actual deposits in the bank during this same period ($76,365.36) represent the business's recoverable lost profits ($53,498.71). In short, the plaintiffs' theory of recovery is that average gross profits from before the accident may provide a jury with a method to calculate Castleberry's lost profits.[4] The plaintiffs, not surprisingly, cite no authority to support their argument that lost profits can be calculated this way. It's a theory that has no basis in law, fact, or common sense.

Here, there is no evidence tending to prove a track record of net profitability of Castleberry's business, This Little Piggy BBQ. On the contrary, tax returns establish that in the three full years prior to the accident, the business only returned a net profit in

---

[3] The gross profits listed in the tax returns represent the business's total revenue less the cost of goods. Doc. 26-4 at 7, 18, 27. In other words, this figure does not account for expenses such as supplies, licenses, utilities, wages, or the other numerous expenses a restaurant naturally incurs. Moreover, Castleberry did not file tax returns for 2017, so the plaintiffs use bank deposits instead. *See* Doc. 26-5 at 2. Merely using the business's bank deposits—which do not even account for restaurant's cost of goods—to calculate profitability adds another flip into what can already be described as logical gymnastics.

[4] At oral argument, plaintiff tried to come up with other theories to recover lost profits, such as allowing the jury to find a history of profitability by ignoring certain business expenses, but the plaintiff did not support this theory with legal authority, factual evidence, or expert opinion.

2014.  Doc. 26-4 at 4, 15, 27.  In 2014, the business reported a net profit of $19,264; in 2015, the business reported a net loss of $7,972; and in 2016, the business reported a net loss of $1,178.  *Id*.  Thus, the plaintiffs have not supported their claim with evidence from which a jury could calculate lost profits without resorting to guesswork. Accordingly, the defendants' motion for summary judgment on the plaintiffs' lost profits claim is **GRANTED**.

### B.  Punitive Damages

The plaintiffs have asserted a claim for punitive damages pursuant to O.C.G.A. § 51-12-5.1.  Punitive damages are available in "tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 15-12-5.1. "Negligence, even gross negligence, is inadequate to support a punitive damage award."  *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988).  In motor vehicle accident cases, "punitive damages are not recoverable where the driver at fault simply violated a rule of the road."  *Carter v. Spells*, 229 Ga. App. 441, 442 (1997).

The plaintiffs argue that Thomas completely disregarded the rights of other travelers by parking his truck partially in the road for his own convenience.  Doc. 27 at 15.  Specifically, the plaintiffs point to Thomas's testimony that he parked directly beside a no parking sign and that he did not consider parking anywhere else because he wanted his trailer to be unloaded first when Cash Liquidations opened.  Doc. 27 at 14-15.

The defendants argue that this is a straightforward motor vehicle accident case, and, at most, Thomas was merely negligent.  The defendants also argue that there is no evidence of aggravating factors in this case that could support an award of punitive damages, and that even if Thomas violated a rule of the road, that is insufficient for an award of punitive damages.  Doc. 26 at 14-15 (quoting *Carter,* 229 Ga. App. at 442).

But despite the defendants' arguments, there is sufficient evidence to create a jury question as to whether Thomas intentionally violated the rules of the road.  First, it is undisputed that Thomas arrived at Cash Liquidations three and a half hours before it opened.  Doc. 31-3 at 63:5-24.  Second, it is undisputed that Thomas was aware that his truck was parked partially in the road, creating a hazard for other drivers for an extended time.  Docs. 26-8 ¶ 3; 29 ¶ 3; 31-3 at 71:4-8.  Finally, Thomas twice stated in his deposition that he parked directly beside a no parking sign.  Doc. 31-3 at 107:15-108:2, 148: 6-21.  In conclusion, the Court finds that based on this evidence, a reasonable jury could conclude that Thomas's actions exhibited willful misconduct and that the plaintiffs are entitled to punitive damages.  Accordingly, the defendants' motion for summary judgment on the plaintiffs' punitive damages claim is **DENIED**.

### C. Attorney's Fees

The plaintiffs have also asserted a claim for attorney's fees under O.C.G.A. § 13-6-11.  Georgia law allows attorney's fees when the "defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."  O.C.G.A. § 13-6-11.  Here, the plaintiffs seek attorney fees because of Thomas's alleged bad faith.  Doc. 27 at 16.  Bad faith in this context refers to the "dealings out of which the cause of action arose, rather than bad faith in defending or

resisting the claim after the cause of action has already arisen." *Comput.
Communications Specialists, Inc. v. Hall*, 188 Ga. App. 545, 547 (1988) (citation
omitted).  "Bad faith requires more than 'bad judgment' or 'negligence,' rather the
statute imports a 'dishonest purpose' or some 'moral obliquity' and implies 'conscious
doing of wrong' and a 'breach of known duty through some motive of interest of ill will.'"
*Lewis v. D. Hays Trucking, Inc.*, 701 F. Supp.2d 1300, 1313 (N.D. Ga. 2010) (quoting
*Vickers v. Motte*, 109 Ga. App 615, 619-20 (1964)).

On this issue, both parties either repeat their punitive damages argument or
argue the two issues together.  Docs. 27 at 15-16; 32 at 3-4.  And while sometimes the
fate of a punitive damages claim may not foretell that of a bad faith attorney's fee claim,
this is not one of those rare cases.  *See Lewis*, 701 F. Supp.2d at 1311-13.  Based on
the evidence outlined in the punitive damages section above, a reasonable jury could
find that Thomas acted with bad faith and that the plaintiffs are entitled to attorney's
fees.  Accordingly, the defendants' motion for summary judgment on the plaintiffs'
attorney's fees claim is **DENIED**.

### D.  Negligence Per Se

The plaintiffs allege that the defendants were liable per se by failing to place
warning devices in the road as required by 49 C.F.R. § 392.22(b).  Doc. 1-1 at ¶ 26.
The regulation states that "[w]henever a commercial motor vehicle is stopped upon the
traveled portion of a highway or the shoulder of a highway for any cause other than
necessary traffic stops, the driver of the stopped commercial motor vehicle shall
immediately activate the vehicular hazard warning signal flashers and continue the
flashing until the driver places the warning devices required by . . .  this section."  49

C.F.R. § 392.22(a).  The regulation requires two warning devices in the direction of approaching traffic and one warning device in the direction away from approaching traffic.  49 C.F.R. § 392.22(b).

The defendants argue that negligence per se is inapplicable because "the Plaintiffs have no evidence that Defendant Thomas did not place warning devices in compliance with 49 C.F.R. § 392.22(b)."[5]  Doc. 32 at 1.  The plaintiffs, however, point to Castleberry's verified discovery responses where he stated that "Thomas failed to place warning signs, turn on his hazard lights, or otherwise warn drivers that he was parked in the roadway."  Doc. 27-2 at 16-17.  Also, and assuming Defendant Thomas placed a warning sign, it is disputed whether Thomas placed the signs properly.  *See* Doc. 31-5 at 29:9-18.  Because of this evidence, the Court cannot rule as a matter of law that Thomas properly placed warning devices as required by 49 C.F.R. § 392.22. Accordingly, the defendants' motion for summary judgment on the plaintiffs' negligence per se claim is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the defendants' motion for partial summary judgment (Doc. 26) is **GRANTED in part and DENIED in part**.  The plaintiffs' claim for lost profits is **DISMISSED**.  The plaintiffs' remaining claims may proceed to trial.

**SO ORDERED**, this 12th day of October, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Originally, the defendants also argued that the regulation was inapplicable because an exception applied for commercial vehicles parked "within the business or residential district of a municipality" during daylight hours.  49 C.F.R. § 392.22(b)(2).  However, the defendants conceded at oral argument that Thomas was not parked within a municipality.

-9-